*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KEITH RED ELK, | ) | |
| | ) | Supreme Court No. S-15240 |
| Appellant, | ) | |
| | ) | Superior Court No. 3HO-11-00061 CI |
| v. | ) | |
| | ) | O P I N I O N |
| LAURA B. MCBRIDE, | ) | |
| | ) | No. 6987 – March 13, 2015 |
| Appellee. | ) | |
| _____ | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Homer, Charles T. Huguelet, Judge.

Appearances: Phil N. Nash, Kenai, for Appellant. Laura B. McBride, pro se, Homer, Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

STOWERS, Justice.

## I.    INTRODUCTION

Two parents disputed the legal custody and visitation rights for their daughter; the mother resides in Homer and the father resides on the Fort Peck Indian Reservation in Montana. The superior court awarded sole legal custody to the mother because it concluded that the parties could not communicate effectively to co-parent their daughter. The court ordered unsupervised visitation between the father and the daughter in Alaska, but prohibited visitation on the reservation until the daughter turned eight.

Although the superior court did not abuse its discretion when it decided legal custody, it failed to fully justify its decision when creating its restrictive visitation schedule and allocating visitation expenses. Consequently we remand for further proceedings consistent with this opinion.

## II.    FACTS AND PROCEEDINGS

### A.    Facts

In 2009 Laura McBride, who was living in Homer, left to attend a welding certification program in Poplar, Montana, on the Fort Peck Indian Reservation. There she met Keith Red Elk, who was the Operations Manager for Fort Peck Tech Services[1] and also her instructor for the program. McBride and Red Elk became friends, and began a romantic relationship four or five months later. After the end of the welding program McBride was offered a position welding for Fort Peck Tech Services.

McBride learned that she was pregnant sometime around New Years 2010. She felt that her relationship with Red Elk changed after she became pregnant. McBride alleges that Red Elk threatened to fire her, made her leave his home, and one time pulled back his hand as if he intended to hit her. McBride decided to return to Homer, mainly because she felt that Red Elk was controlling. Red Elk made it clear that he believed McBride would not be able to support herself on her own. He also believed that McBride was only temporarily going to Homer and would return to Montana where she would raise their child.

When McBride first returned to Homer she and Red Elk spoke on the phone daily. But their relationship quickly deteriorated to the point where only email

---

[1]    Fort Peck Tech Services is the largest employer on the reservation, employing 30 workers, and it brings in the lion's share of the reservation's revenue. As operations manager at Fort Peck Tech Services, Red Elk is in charge of all hiring and firing decisions.

communication was effective. Even using email, the couple did not communicate well; instead "[e]ach gave speeches to the other." Red Elk was depressed that McBride did not want to return to Poplar, and he was very uncomfortable with McBride's plans for their daughter's birth: McBride wanted to deliver the baby in her cabin and Red Elk wanted the child to be born in a hospital.

Vera[2] was born in August 2010. Red Elk traveled to Homer in September and stayed for 11 days to visit with his daughter. During the visit McBride reiterated her belief that they could not work things out because Red Elk was too controlling.

In October McBride and Vera traveled to North Dakota for a funeral. Red Elk picked them up at the airport and drove them to the funeral. Over McBride's objections, Red Elk stopped in Poplar on the way. McBride and Red Elk fought, and McBride told Red Elk to leave once he had dropped them off at the funeral.

After returning to Homer, McBride emailed Red Elk that she wanted to take a break from communication. In response, Red Elk left six intoxicated messages on McBride's answering machine threatening to kill her, threatening her with legal action, and threatening to take Vera to the reservation. Afterward Red Elk did not remember leaving the messages and insinuated that it was McBride's fault because she drove him to drink. McBride applied for and received a long-term protective order. Red Elk unsuccessfully tried to dissolve the protective order on two separate occasions. He also hired a private investigator to follow McBride.

## B.    Proceedings

Red Elk filed a request for emergency custody in the Fort Peck Tribal Court in December 2010. He alleged that: (1) McBride lived in a remote place; (2) she was threatening suicide and had a mental disorder; and (3) she "refused to feed the child for

---

[2]    A pseudonym has been used to protect the child's privacy.

three . . . days after birth."[3]  Red Elk was represented by a tribal lay advocate in the tribal court proceeding; McBride appeared pro se.  In March 2011 the Fort Peck Tribal Court "denied jurisdiction over the cause of action" and dismissed Red Elk's petition.  Red Elk appealed the dismissal to the Fort Peck Court of Appeals, but in August 2011 the Fort Peck Court of Appeals affirmed the trial court's dismissal.

In the interim, in February 2011, McBride filed a complaint for custody in the Alaska Superior Court in Homer.  She did not advise the superior court of the pending action in the Fort Peck Tribal Court.  In July Red Elk filed a motion in the superior court to defer to the action in the Fort Peck Tribal Court, but his motion failed to mention that the tribal court action had been dismissed.  After the Fort Peck Court of Appeals' decision became public, counsel for McBride brought it to the superior court's attention.  The court denied Red Elk's motion to defer.

In January 2012 Red Elk filed a new petition in the Fort Peck Tribal Court. He alleged that:  (1) Vera had not been given her immunizations; (2) she had an unexplained scar on her forehead; and (3) she was wearing shoes that were too small. The tribal trial court dismissed the petition for lack of jurisdiction.  Red Elk again appealed.

Trial in the superior court, set for January 2012, was continued in order for Red Elk to obtain new representation.  Once Red Elk obtained new counsel, his attorney moved to file amended defenses, counterclaims, and an amended answer.  The superior court denied his motion.

The custody trial was ultimately held in December 2012.  Red Elk argued for shared legal custody with open and frequent visits on the reservation starting when

---

³     Red Elk also made these same allegations to the Alaska Office of Children's Services (OCS) in Homer.  OCS conducted a home visit and found the concerns unsubstantiated.

Vera turned four. He wanted Vera to visit the reservation as soon as possible so she could begin learning about her Sioux heritage. He also raised concerns with many of McBride's parenting decisions.[4] McBride asked for sole legal custody and a restriction that Vera not be allowed to visit the reservation until she turned twelve because McBride was afraid that Red Elk would file an emergency petition alleging neglect in order to keep Vera there. Margaret Coleman, a visitation supervisor, also testified. She described Red Elk as charming, charismatic, and very attentive and appropriate with Vera. But she testified that some of Red Elk's conduct during the visit alarmed her and made her think that Red Elk was a "flight risk." She was concerned because Red Elk seemed to feel that he had a "divine right" to Vera and "was going to war" with McBride.

The superior court awarded primary physical and sole legal custody to McBride. The court concluded that "[c]ooperation and meaningful communication between Ms. McBride and Mr. Red Elk [are] not possible at this time." The court found that "Mr. Red Elk appears to be incapable of maintaining a relationship with Ms. McBride unless he is the dominant party" and that, due to differences in their outlooks on life, they could not communicate effectively. It also noted "very little history of compromise." The court ordered McBride to begin teaching Vera about her Sioux heritage and allowed that Red Elk could provide supplemental materials with McBride's cooperation.

The superior court ordered unsupervised visitation with Vera, but it concluded that "if [Vera] visits her father on the reservation he is very likely to file a petition alleging neglect with the tribal court and ask for emergency custody." The court based this conclusion on its finding that Red Elk had a history of making "false or

---

[4]    Mainly these were: (1) McBride's decisions to have the birth at home; (2) her delay in getting Vera immunized; (3) her decision to start toilet training at four months; and (4) her use of sign language when Vera was learning to talk.

exaggerated claims of abuse." As a consequence, the court ordered that visitation be restricted to Alaska until Vera turned eight. The court also declined to order Vera's presence on the reservation for a naming ceremony "[w]ithout adequate assurances or guarantees" that Red Elk would not "use the occasion of a naming ceremony to hold [Vera] on the reservation pending a decision by the tribal court on renewed allegations of abuse or neglect." The superior court laid out a schedule of tiered visitation allowing greater visitation as Vera grew older, and clarified that Red Elk must "reasonably satisf[y]" the quota from the previous tier of visitation before moving to the next tier.

Red Elk filed two motions for reconsideration of the superior court's orders. Relevant to this appeal, he argued that: (1) the cost of traveling to Homer to fulfill the tiered visitation order was prohibitive; (2) it was not in Vera's best interest to wait so long to travel to the reservation given that members of his family had a history of early death; (3) the restrictive visitation schedule was a penalty for exercising his right to file proceedings in tribal court; (4) Vera would be unable to learn about her Sioux heritage because he would not be able to comply with the quotas; and (5) McBride should not be the parent responsible for educating Vera about her Sioux heritage. The superior court denied both of Red Elk's motions for reconsideration.

Red Elk appeals. The Fort Peck Court of Appeals has since affirmed the dismissal of his second petition.[5]

---

[5]    In March 2014 the Fort Peck Court of Appeals released its decision in Red Elk's second petition. *In re A.V.B.M*, FPCOA No. 616 (Mar. 6, 2014). The court of appeals again dismissed the petition, holding that Fort Peck was an inconvenient forum. *Id.* at 1. But it expressed concern that although the tribal court had twice decided to defer to Alaska, the Alaska Superior Court had refused to allow Vera to visit the reservation. *Id.* at 3.

## III. STANDARD OF REVIEW

"The superior court has broad discretion in its determinations of child custody."[6] We will overturn the superior court's conclusion on a custody issue "only if the entire record demonstrates that the controlling findings of fact are clearly erroneous or that the trial court abused its discretion."[7] "A factual finding is clearly erroneous when a review of the record leaves the court with a definite and firm conviction that the superior court has made a mistake."[8] An abuse of discretion exists where the superior court "considered improper factors in making its custody determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[9] We review visitation awards for abuse of discretion,[10] including the allocation of visitation expenses.[11]

---

[6] *Limeres v. Limeres*, 320 P.3d 291, 295 (Alaska 2014).

[7] *Chesser-Witmer v. Chesser*, 117 P.3d 711, 715 (Alaska 2005) (quoting *Hamilton v. Hamilton*, 42 P.3d 1107, 1111 (Alaska 2002)) (internal quotation mark omitted).

[8] *Fardig v. Fardig*, 56 P.3d 9, 11 (Alaska 2002) (internal quotation marks omitted).

[9] *Siekawitch v. Siekawitch*, 956 P.2d 447, 449 (Alaska 1998).

[10] *Skinner v. Hagberg*, 183 P.3d 486, 489 (Alaska 2008) (citing *Lone Wolf v. Lone Wolf*, 741 P.2d 1187, 1190 (Alaska 1987)).

[11] *C.R.B. v. C.C.*, 959 P.2d 375, 384 (Alaska 1998) (setting standard as a matter of first impression), *overruled on other grounds by Evans v. McTaggart*, 88 P.3d 1078, 1085 (Alaska 2004); *see also Ronny M. v. Nanette H.*, 303 P.3d 392, 400 (Alaska 2013).

We also review the superior court's decision whether to grant leave to amend pleadings for abuse of discretion.[12]

## IV.   DISCUSSION

On appeal Red Elk challenges:  (1) the superior court's decision not to allow him to amend his pleadings; (2) the court's decision on legal custody, including its order that McBride educate Vera about her Sioux heritage; and (3) the court's visitation schedule, which he argues is prohibitively expensive and a penalty against him for filing in the Fort Peck Tribal Court.

### A.   The Superior Court Did Not Abuse Its Discretion When It Denied Red Elk's Motion To Amend His Pleadings.

Alaska Civil Rule 15(a) provides that if trial has been set a party may only amend a pleading "by leave of court or by written consent of the adverse party," but "leave shall be freely given when justice so requires."  "If a party would be prejudiced by a proposed amendment, the court must apply a balancing test to decide whether the amendment should be granted, weighing the degree of prejudice to the opposing party against the hardship to the movant if the amendment is denied."[13]

Red Elk moved to amend the pleadings in June 2012, more than one year after he filed his answer.  During this time, Red Elk was represented by three different private attorneys.  The case had already progressed through many filings.  Trial was scheduled to commence in July, and the parties had already filed their trial briefs.  Under these circumstances, McBride would have been prejudiced by a grant of leave to amend so late in the proceedings.  Red Elk, in comparison, did not experience hardship because the arguments he mainly advanced were made previously in his motion to defer to the

---

[12]    *Miller v. Safeway, Inc.*, 102 P.3d 282, 288 (Alaska 2004) (citing *Bauman v. Day*, 942 P.2d 1130, 1132 (Alaska 1997)).

[13]    *Shooshanian v. Wagner*, 672 P.2d 455, 458 (Alaska 1983).

Fort Peck Tribal Court.[14] The superior court did not abuse its discretion by denying Red Elk's motion to amend his pleadings.

### B. The Superior Court Did Not Abuse Its Discretion When It Awarded Sole Legal Custody To McBride.

Although there is a preference for joint legal custody,[15] it may only be awarded if it is in the best interest of the child.[16] And "joint legal custody is only appropriate when the parents can cooperate and communicate in the child's best interest."[17] The parent with legal custody is responsible for making all decisions regarding "the [child's] education, non-emergency health care, morals, and religion."[18]

Red Elk argues that the superior court made erroneous factual findings and improperly considered the age difference between him and McBride when awarding legal custody. Red Elk also argues that the court abused its discretion in ordering McBride to begin educating Vera about her Sioux heritage.

The superior court found that "[c]ooperation and meaningful communication between Ms. McBride and Mr. Red Elk [are] not possible at this time" because communication was "strained by age and outlook" and "[n]either party is likely

---

[14]    Red Elk did not specifically lay out all of the amendments he wished to make, but the gist of his motion was directed at lack of subject matter jurisdiction and improper venue, both of which Red Elk raised in his July 2011 motion to defer.

[15]    *Farrell v. Farrell*, 819 P.2d 896, 898 n.1 (Alaska 1991).

[16]    AS 25.20.060(c).

[17]    *Jaymot v. Skillings-Donat*, 216 P.3d 534, 540 (Alaska 2009) (quoting *Farrell*, 819 P.2d at 899) (internal quotation marks omitted).

[18]    *Ronny M. v. Nanette H.*, 303 P.3d 392, 404 (Alaska 2013) (citing *Elton H. v. Naomi R.*, 119 P.3d 969, 975 (Alaska 2005)).

to change." These findings are well supported in the record.[19] In making these findings, the court was merely commenting on the tension that the parties' differences in age and outlook caused; the court did not view age as a factor in and of itself. The parties' disagreements about such things as birthing and child rearing are exactly the kinds of disputes that parents sharing legal custody must effectively consider together. The superior court did not clearly err in its findings or abuse its discretion by considering the fact that the parties' outlooks on life were very different.

Red Elk also argues that it was an abuse of discretion to order McBride to educate Vera about her Sioux heritage despite McBride not being Sioux. But a person is not disqualified from raising an Indian child merely by not being a member of the child's tribe.[20] The effect of the court's order is to ensure that Vera will be exposed to her Sioux culture as much as possible even while she is in McBride's primary physical custody. The court's order also enables both parents to be invested in Vera's cultural education, which is surely in Vera's best interest. The court did not abuse its discretion when it ordered that Vera would receive cultural education from McBride.

## C. The Superior Court's Visitation Schedule Must Be Remanded.

Red Elk argues that the superior court's visitation schedule is prohibitively expensive and that the court penalized him for filing in the Fort Peck Tribal Court. Because the superior court did not make adequate findings or consider relevant evidence

---

[19]    There was extensive testimony at the hearing regarding Red Elk's controlling tendencies and his disapproval of McBride's childbirth and child rearing ideas.

[20]    *See In re Adoption of Sara J.*, 123 P.3d 1017, 1032-33 (Alaska 2005) ("[T]his does not mean that [the non-Native parent] will be unable to meet the children's cultural needs, nor does it disqualify her altogether from adopting the children.").

in making its orders regarding visitation expenses and its visitation schedule, those portions of the court's orders must be remanded.

### 1. Visitation expenses

Alaska Civil Rule 90.3(g) provides: "After determining an award of child support under this rule, the court shall allocate reasonable travel expenses which are necessary to exercise visitation between the parties as may be just and proper for them to contribute." We have held that when "adequate explanation regarding visitation . . . does not appear in the record, we . . . remand to the superior court for further explanation."[21]

The superior court ordered that "Mr. Red Elk will be responsible for the cost of transportation, including the cost of an escort until both parents agree Vera may fly unaccompanied or until she reaches age 12." But the superior court did not explain why Red Elk should bear the full burden of the visitation costs.[22] It did not consider Rule 90.3(g) or conduct any analysis regarding the parties' finances in the context of allocating visitation expenses. The court made no findings on affordability and received no evidence regarding the actual costs associated with visitation. Allocating all of the visitation expenses to one parent without explanation is an abuse of discretion.[23] On remand, the superior court must consider what division of visitation expenses would be

---

[21] *Jack C. v. Tally C.*, 284 P.3d 13, 21-22 (Alaska 2012) (remanding when division of visitation time was not explained); *see also Meidinger v. Meidinger*, Mem. Op. & J. No. 508, 1990 WL 10515483, at *3 (Alaska June 20, 1990) (holding that although a trial court has discretion, "where a party is awarded more than requested and more than the findings of fact support, the award, to pass appellate review, must be explained").

[22] *See Ronny M.*, 303 P.3d at 407 (holding that it was an abuse of discretion to allocate all of the visitation expenses to one parent without any further explanation).

[23] *See id.*

"just and proper."[24] It should also consider whether it is just and proper to allocate some or all of Vera's Alaska Permanent Fund Dividends towards visitation costs.[25]

### 2.    Visitation schedule

The superior court's visitation order allows Red Elk increasingly long visitation periods as Vera grows older, provided that Red Elk fulfills the visitation allotted for each level before moving to the next. The order also restricts visitation to Alaska until Vera turns eight, at which point she can visit Red Elk on the reservation. Red Elk contends that the superior court penalized him for filing emergency custody proceedings in the Fort Peck Tribal Court by restricting visitation to Alaska and by creating a tiered visitation system that he could not financially complete because it required him to continually fly to Alaska and spend long periods of time with Vera to satisfy the court's tiered standard. Although it is not clear from the record, parts of the superior court's custody order suggest that it weighed Red Elk's allegations in the Fort Peck Tribal Court against him in deciding this visitation issue. If it did so, then the superior court abused its discretion by failing to make adequate findings to substantiate such a decision.[26] We have previously addressed this issue in the context of unproven allegations of child abuse made by one parent against the other in court proceedings.

---

[24]    Alaska R. Civ. P. 90.3(g).

[25]    *See Ronny M.*, 303 P.3d at 407-08.

[26]    Because we remand the visitation order due to the superior court's failure to adequately explore whether Red Elk's allegations were made in good faith, we need not decide whether it gave weight to Red Elk's choice of forum and whether it was correct to do so.

In *Stephanie W. v. Maxwell V.*, two parties disputed custody of their minor son.[27] During the proceedings the mother alleged that the father had sexually abused the son, but the superior court concluded that these allegations were not proven by a preponderance of the evidence.[28] In its discussion of the "willingness of each parent to facilitate the child's relationship with the other parent"[29] factor, the superior court noted that the mother had made unfounded allegations of sexual abuse and was likely to be unwilling to foster a relationship between the child and the father.[30] We reversed, holding that so long as the mother's allegations were made in good faith, the superior court should not have weighed them against the mother when making its custody determination.[31] On remand, the mother made additional allegations against the father to the superior court.[32] The court found that the allegations had "almost no support" and weighed them against the mother in its discussion of the "willingness to foster a relationship" factor.[33] On appeal we held that the superior court properly considered the allegations in its discussion of the "willingness" factor because the allegations did not have a good-faith basis.[34] We explained that in circumstances like these the superior

---

[27]    274 P.3d 1185, 1187-89 (Alaska 2012) (*Stephanie W. I*).

[28]    *Id.* at 1188-90.

[29]    AS 25.24.150(c)(6).

[30]    *Stephanie W. I*, 274 P.3d at 1190-92.

[31]    *Id.*

[32]    *Stephanie W. v. Maxwell V.*, 319 P.3d 219, 229 (Alaska 2014) (*Stephanie W. II*).

[33]    *Id.*

[34]    *Id.* ("[I]t is common sense that in a custody proceeding, good-faith (continued...)

-13-                                                                                      **6987**

court must balance "the desire of the court to encourage good-faith, objectively credible reports of parental behavior relevant to the custody dispute" with "the need to guard against false reports and to consider a parent's actual unwillingness to foster a relationship with the other parent."[35]

In another case, *James R. v. Kylie R.*, the superior court weighed one party's allegations against the other as a negative factor in its determination of the "willingness" factor, which was the dispositive factor in the court's custody decision.[36] On appeal we affirmed the court's custody decision, holding that the superior court did not clearly err in finding that the father was less likely than the mother to facilitate a relationship between the daughter and the other parent, and did not abuse its discretion in its custody order.[37] We reaffirmed our holdings from *Stephanie W. I* and *II* and noted that to have a good-faith basis, the allegations must be based on supporting evidence, either from the superior court's "objective credibility determination" or other "extrinsic evidence."[38] We reiterated that "some unsupported allegations fall outside the normal course of litigation and may speak to a parent's unwillingness to foster a relationship."[39] In such cases "the

---

[34](...continued)
allegations by one parent against the other parent regarding behavior relevant to the custody decision and the child's best interests should not be held against the reporting parent . . . where the allegations are based on supporting evidence.").

[35]   *Id.* at 230.

[36]   320 P.3d 273, 275-79 (Alaska 2014).

[37]   *Id.* at 281-83.

[38]   *Id.* at 283 (quoting *Stephanie W. II*, 319 P.3d at 230).

[39]   *Id.*

court may consider the parent's litigation conduct" in the context of the willingness of both parents to foster a relationship with the other.[40]

Although custody rather than visitation was at issue in these cases, they are relevant to our analysis in this appeal. Red Elk made two separate sets of allegations to the tribal court. In his first petition to the tribal court he alleged that: (1) McBride lived in a remote place; (2) she was threatening suicide and had a mental disorder; and (3) she "refused to feed the child for three . . . days after birth." In his second petition to the tribal court Red Elk alleged that: (1) Vera had not been given her immunizations; (2) she had an unexplained scar on her forehead; and (3) she was wearing shoes that were too small. But no court has taken evidence and evaluated these allegations, including whether Red Elk made them in good faith. The tribal trial court, in its well-reasoned decisions, did not proceed beyond jurisdiction and venue. And the superior court made only conclusory findings that the claims were "false or exaggerated," but these findings were not substantiated by evidence in the record.

If Red Elk made these allegations in good faith and on the basis of supporting evidence, then it was an abuse of discretion for the superior court to weigh Red Elk's litigation conduct against him and to make a visitation decision on this basis. As we said in the *Stephanie W.* cases and in *James R.*, a court cannot penalize a parent for his use of process without giving the parent the opportunity to establish whether the allegations were made in good faith and without the court making factual findings to support its decision. We reverse the superior court's visitation order and remand for the

---

[40]    *Id.*

court to make the required findings, which may involve taking additional evidence if there are contested issues of fact.**41**

## V.    CONCLUSION

We AFFIRM the superior court's order denying Red Elk's motion to amend the pleadings and its order on legal custody, but we REVERSE and REMAND its visitation schedule and allocation of visitation costs for further proceedings consistent with this opinion. We do not retain jurisdiction.

---

**41**    Red Elk also argues that the superior court imposed the tiered visitation plan as "a penalty against [him]." The superior court's imposition of a tiered visitation plan is not itself an abuse of discretion. Alaska courts have issued such visitation orders in the past, *see Trombley v. Trombley*, Mem. Op. & J. No. 1116, 2002 WL 31682366, at *1 (Alaska Nov. 27, 2002) (ordering tiered — also called stair-step — visitation), and we agree with the superior court that "the gradual increase in overnight visits allows [Vera] to develop the appropriate level of comfort." Nonetheless, the tiered visitation schedule as it was ordered is inseparable from the superior court's overall visitation order, which is being remanded for further proceedings.

Finally, Red Elk argues that the superior court abused its discretion when it held that he must provide "adequate assurances" for the court to order Vera's attendance at a naming ceremony on the reservation. We likewise decline to reach this issue because the superior court's "adequate assurances" ruling is entangled with its decision on visitation. It seems clear that the "assurances" the court was looking for were that Red Elk would not file unsupported or unfounded custody claims in the tribal court or otherwise keep Vera on the reservation and not return her to McBride. But as we have explained, the superior court must first find that Red Elk's prior tribal court filings and allegations were made without a good-faith basis or that there is a reasonable risk that Red Elk would otherwise keep Vera on the reservation and not return her to McBride. If there was no bad faith by Red Elk in his tribal court filings and there is no reasonable risk that Red Elk will not return Vera to McBride, then there would be no basis — in the absence of other evidence — for the superior court to demand assurances. Thus the superior court will need to reconsider each of these related orders on remand, whether it elects to make additional findings on Red Elk's conduct or whether it elects to forgo relying on Red Elk's conduct as a factor in its visitation orders.