NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| MITCH J., <br><br> Appellant, <br><br> v. <br><br> STATE OF ALASKA, DEPARTMENT OF FAMILY & COMMUNITY SERVICES, OFFICE OF CHILDREN'S SERVICES, <br><br> Appellee. | Supreme Court No. S-19096 <br><br> Superior Court Nos. 3PA-22-00127/ 00128 CN <br><br> MEMORANDUM OPINION AND JUDGMENT[*] <br><br> No. 2098 – July 30, 2025 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Megan R. Webb, Assistant Public Defender, and Terrence Haas, Public Defender, Anchorage, for Appellant. Paul S. Morin, Assistant Attorney General, Kenai, and Treg R. Taylor, Attorney General, Juneau, for Appellees.

Before: Carney, Chief Justice, and Borghesan, Pate, and Oravec, Justices. [Henderson, Justice, not participating.]

## I. INTRODUCTION

The incarcerated father of children in Office of Children's Services (OCS) custody planned to testify during the trial to terminate his parental rights. He requested

---

[*] Entered under Alaska Appellate Rule 214.

to be transported from jail so that he could testify in person rather than by telephone. The superior court denied his request. The father appeals.

Because the superior court did not abuse its discretion, we affirm the court's decision.

## II. FACTS AND PROCEEDINGS

### A. Factual Background

In early August 2022 Mitch J. shot and killed his wife Cleo J. in their home while their children were asleep in another room.[1] Police responded, removed the children from the home, and notified OCS, which assumed emergency custody. Soon after, Mitch was arrested and charged in Cleo's death.

OCS then filed an emergency petition for temporary custody of the children, alleging that the children were in need of aid because they were at risk of physical harm and neglect.[2] OCS spoke with Mitch about possible placement options for his children. Mitch provided the names of some friends from church. But because OCS is required by statute to place children with family when possible,[3] OCS placed the children with Cleo's sister and her husband.

Ten days after the shooting, Mitch stipulated that there was probable cause to find his children in need of aid and to grant OCS temporary custody.[4] Mitch was

---

[1] Pseudonyms are used to protect the family's privacy.

[2] *See* AS 47.10.011(6) (providing court may find child in need of aid if at substantial risk of physical harm); AS 47.10.011(9) (providing court may find child in need of aid if child has been subjected to neglect). The emergency petition also alleged that the children were in need of aid under AS 47.10.011(10), because Mitch's use of an intoxicant "substantially impaired" his ability to be a safe parent.

[3] AS 47.14.100(e) (establishing placement priorities as (1) adult family member, (2) family friend able to be licensed as foster home, (3) licensed foster home, and (4) institution).

[4] It is not clear from the record on which grounds Mitch stipulated to probable cause.

indicted for murder and manslaughter on that same day. He remained in jail during the proceedings in both the child in need of aid (CINA) and criminal cases.

**B.     Proceedings Regarding Transportation To Court**

A pretrial hearing in October 2022 was continued to November because Mitch was not available by telephone from jail. At that hearing, the court reminded Mitch's attorney that it was her responsibility to arrange for his participation by telephone. It also explained that prisoners were not transported for CINA cases except sometimes for termination trials. The court directed Mitch's attorney to the "whole statute" that addresses what an "incarcerated individual [must do] to attend a civil hearing."

At the continued hearing, Mitch participated by telephone and stipulated to adjudicate the children in need of aid due to his incarceration.[5] At that hearing, the court also advised Mitch that OCS had filed a petition to terminate his parental rights and set a disposition hearing for January 2023.

At the disposition hearing, Mitch participated by telephone. The hearing was continued to March 8 to allow the guardian ad litem (GAL) to file a report. As a result, the court also rescheduled the termination trial. Mitch's attorney requested trial dates to be set for June "just for transportation purposes and getting [Mitch] here." Therefore the court set trial for June 27 and 28.

In March the court held the continued disposition hearing; Mitch appeared by telephone and stipulated that the children remained in need of aid.

---

[5]     *See* AS 47.10.011(2) (providing court may find child in need of aid if parent is incarcerated and has not made adequate arrangement for child).

On June 23 — four days before trial was set to begin — Mitch's attorney filed a motion to transport Mitch to court for trial. The motion cited AS 33.30.081(f),[6] the statute governing transportation of prisoners to civil proceedings, and argued that due process required Mitch to attend the trial in person. The motion was served on OCS and the GAL, but it was not served on the Department of Public Safety (Public Safety).

Before the termination trial began on June 27, the court addressed the transport motion. The court observed that AS 33.30.081 authorized it to order Public Safety to transport a prisoner if the prisoner's physical presence was "essential to the just disposition" of the matter at issue.[7] The court also noted that the statute required that Public Safety be provided a "reasonable opportunity" to comment on the request before the court issued an order.[8] And it further observed that the statute directed the court to consider other available alternatives to the prisoner's presence, including telephone testimony.[9]

The court then found that because the motion had not been served on Public Safety, it had not been given a reasonable opportunity to comment on the transportation request. Therefore the court denied the motion. But it granted Mitch's attorney's request to revisit the issue if she were able to serve Public Safety and it was able to comment on the request.

---

[6] AS 33.30.081(f) provides that a court "may order a prisoner" to be transported "only if the court determines, after providing a reasonable opportunity for the commissioner [of the Department of Public Safety] to comment, that the prisoner's personal appearance is essential to the just disposition of the action. In making its determination, the court shall consider available alternatives to the prisoner's personal appearance including deposition and telephone testimony."

[7] *Id.*

[8] *Id.*

[9] *Id.*

Later that day, the court agreed to pause the presentation of evidence after Mitch's attorney confirmed that she had served Public Safety and that it was available to respond to the motion. The assistant attorney general representing Public Safety and an Alaska State Trooper sergeant assigned to Judicial Services in Anchorage appeared by telephone. The sergeant testified that Mitch was being housed at the Anchorage jail, and that because of his murder indictment, Mitch was a "higher risk" inmate. Transporting Mitch to court would therefore require two Judicial Services officers to be in court with Mitch during the entire trial, and Mitch would be in full restraints. The sergeant testified that Judicial Services did not "have the bodies" to transport Mitch on such short notice, and remarked that the "proper timing" for a transportation request was "two weeks ago." The court took the motion under advisement, but never ruled on it because the trial was continued to February 2024 due to discovery issues. The court set a new trial date for February 12 and 13 with a motions deadline of January 29.

At a status hearing in November, Mitch's attorney advised the court that Mitch had pled guilty to manslaughter, but had not yet been sentenced. In response to the court's inquiry about whether Mitch would continue to appear by telephone for the remainder of the trial, his attorney stated she was "going to be asking for him to be transported." The court specifically reminded Mitch's attorney to give notice to Public Safety of any transport motion and "make sure that you look at the transport statute and you dot all your I's and cross all your T's." The court also provided Mitch's attorney with the name of Public Safety's attorney.

On January 19, 2024 — ten days before the court's motion filing deadline and twenty-five days before trial was set to resume — Mitch's attorney filed a renewed motion to transport Mitch to trial. The motion specifically stated that Mitch intended to testify at the trial. Once again, the motion was not served on Public Safety. On January 30 the court issued a deficiency notice "unless and until [the motion was] served on" Public Safety.

Public Safety filed a limited opposition on February 2, indicating that it could not transport Mitch in February because Judicial Services was "significantly short-staffed," but stating it could likely accommodate his request "by mid-April." The opposition was supported by an affidavit of counsel, and stated that "one or more" officers would be required to remain with Mitch during trial and that staffing shortages would likely resolve by mid-April. The affidavit also calculated that the cost of transporting Mitch would be about $300.

At a February 5 status hearing, Mitch's attorney requested to continue the termination trial again until Judicial Services would be able to transport Mitch. OCS and the GAL opposed, noting that trial had already been continued from June the previous year. The court denied the continuance and then turned to Mitch's transport motion.

The court began its analysis with AS 33.30.081(f), and found that Mitch would be able to effectively participate by telephone, observing that such participation had worked well during and after the pandemic. The court then considered the factors listed in *Richard B. v. State, Department of Health & Social Services, Division of Family & Youth Services*.[10] These factors identify considerations for courts to use to determine whether a parent's transportation from jail is "essential to the just disposition" of a CINA hearing.[11] The factors include the cost and inconvenience of transport; potential security risks; the substantiality of the matter at issue; the need for a swift resolution; the possibility of waiting until the parent's release; the probability of success on the merits; the integrity of the correctional system; and the parent's interest in presenting in-person testimony.[12]

---

[10]    71 P.3d 811, 827 (Alaska 2003).

[11]    *Id.* (quoting AS 33.30.081(f)).

[12]    *Id.* (quoting *B.H. v. W.S.* (*In re F.H.*), 283 N.W.2d 202, 209 (N.D. 1979)).

The court "withheld judgment" on the cost, inconvenience, and security risks transporting Mitch could present because it had not seen Public Safety's opposition. The court found that the matter was substantial, but that the transport motion should have been filed "substantially earlier." It found that the need for a swift resolution weighed against transport because the children needed permanency and termination decisions needed "to be made in a timely fashion." And it found that because Mitch was unlikely to be released "in the near future," that factor also weighed against transport. The court declined to comment on the probability of success because it had not yet heard all the evidence. Finally, the court found that it "would rather have [Mitch] in person." But it concluded that, having done "dozens and dozens" of trials with parents on the telephone, it was capable of doing the same with Mitch. The court held that it "can't make th[e] finding" that Mitch's presence was "essential to the just disposition of the action." It therefore denied the motion pursuant to AS 33.30.081(f).

The termination trial resumed on February 12 and 13. Mitch was present on the phone on each day.[13] At the end of the day on February 13, Mitch's attorney again asked the court to order that Mitch be transported to court because he would be her last witness and wanted to testify in person. The court denied her request, noting Judicial Services continued to be short staffed. The court reiterated that it would be a substantial drain on Judicial Services resources to be required to have two officers with Mitch, and concluded, "that's the record on that."

The court characterized the request as a "renewed request for him to be in person for his testimony" but found that it could not be accommodated. And it "reiterate[d] the same findings I made previously that I think the [c]ourt is capable of

---

[13] Early in trial on February 12, Mitch advised the court he was not able to hear certain portions of testimony. The court then gave Mitch additional time to discuss what he had missed with his attorney.

hearing testimony telephonically and making the necessary credibility determinations and findings based on telephonic testimony."

### C. Mitch's Testimony

The trial reconvened the next afternoon. Mitch testified by telephone. On direct examination, Mitch testified that Cleo had abused him throughout their relationship. And he testified that he shot and killed Cleo because he "feared that she was – she was going to kill the kids and me." He stated that she had a knife and that she had told him several times that the kids "bothered her." He also testified that he had pled guilty to manslaughter and that he had been sentenced to 20 years with 13 suspended.

On cross-examination, the GAL questioned Mitch further about the night of the shooting. The GAL also asked Mitch about his plea deal, which included special conditions that permitted him to visit the children only with a "court approved, OCS approved, or professional supervisor." Mitch acknowledged that he had to seek the court's or OCS's approval to have contact with his children.

### D. Termination Order

At the close of evidence, the court ordered written closing arguments. After receiving written arguments, the court issued an order terminating Mitch's parental rights. The court found that OCS had proved by clear and convincing evidence that the children were in need of aid under AS 47.10.011(2) (incarceration); (6) (risk of physical harm); and (8)(A) and (B) (mental injury). The court also found by clear and convincing evidence that OCS had made reasonable efforts to reunify the family, that Mitch had not remedied his conduct, and that it was contrary to the children's best interests to remain with Mitch. The court found that OCS had made reasonable efforts to finalize permanency plans for the children, who had been living with their maternal aunt and uncle since they were taken into OCS custody, and that the aunt and uncle planned to adopt them.

Mitch appeals only the denial of his motions for transportation to trial to testify.

## III. STANDARDS OF REVIEW

We review "decisions regarding prisoner transport under AS 33.30.081(f) for abuse of discretion."[14] "We will find an abuse of discretion when the decision on review is manifestly unreasonable."[15] We may also conclude there was an abuse of discretion when the superior court "considered improper factors in making its . . . determination, failed to consider statutorily mandated factors, or assigned disproportionate weight to particular factors while ignoring others."[16]

Whether it is a violation of due process to require a parent to "participate telephonically rather than being transported" to a termination of parental rights trial is a question of law that we review de novo.[17] When we review this question, "we will adopt the rule most persuasive in light of precedent, reason, and policy."[18] We review factual findings in the light most favorable to the prevailing party at trial, and will reverse a finding only if it is clearly mistaken.[19]

## IV. DISCUSSION

### A. The Law Governing Transportation Of Prisoners For Civil Cases

Alaska Statute 33.30.081(f) governs the transportation of prisoners in civil actions. It provides that:

---

[14] *Alex H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 389 P.3d 35, 41 (Alaska 2017) (citing *Richard B.*, 71 P.3d at 817, 826-28).

[15] *Id.* (quoting *Fink v. Mun. of Anchorage*, 379 P.3d 183, 188 (Alaska 2016)).

[16] *Id.* (quoting *Red Elk v. McBride*, 344 P.3d 818, 822 (Alaska 2015)).

[17] *Id.* (quoting *Seth D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1222, 1226 (Alaska 2008)).

[18] *Id.* (quoting *Richard B.*, 71 P.3d at 817).

[19] *Seth D.*, 175 P.3d at 1226.

A court may order a prisoner who is a party or witness to a civil action . . . to appear at a place other than within a correctional facility only if the court determines, after providing a reasonable opportunity for the commissioner to comment, that the prisoner's personal appearance is essential to the just disposition of the action. In making its determination, the court shall consider available alternatives to the prisoner's personal appearance including deposition and telephone testimony.[20]

The statute thus clearly provides the superior court with discretion to allow prisoners to be transported.[21] But that discretion is also clearly limited to situations in which the court has found that transportation is "essential to the just disposition of the action."[22]

We have considered incarcerated parents' requests to be transported to their termination trials in three cases.[23] First in *Richard B.* a father who was incarcerated due to his conviction for sexual abuse of a minor filed a motion to be transported from prison in Seward to court in Bethel to attend his termination trial.[24] We affirmed the superior court's denial of the motion, noting the father filed the request only six days before he needed to be moved and that he presented no testimony that depended on his credibility or would have affected the outcome of the termination decision.[25]

---

[20] AS 33.30.081(f).

[21] *See Alex H.*, 389 P.3d at 41 (stating this court reviews "decisions regarding prisoner transport under AS 33.30.081(f) for abuse of discretion").

[22] AS 33.30.081(f).

[23] *Richard B.*, 71 P.3d at 816-17; *Seth D.*, 175 P.3d at 1226-31; *Alex H.*, 389 P.3d at 40-41.

[24] *Richard B.*, 71 P.3d at 815-16.

[25] *Id.* at 815-16, 828, 833.

Then in *Seth D.* a father jailed for a number of criminal charges moved for transportation from Seward to his termination trial in Kenai.[26] The superior court denied the motion.[27] We affirmed, observing that the father had sufficient opportunity to consult with his attorney by telephone during the trial.[28]

Finally, in *Alex H.* a father who was serving a lengthy criminal sentence requested to be transported within the same community to his termination trial.[29] He filed the motion one week before trial and specifically stated that he did not intend to testify.[30] We affirmed the denial of his motion because he did not intend to testify, he had failed to show how his presence would affect the outcome of the case, and he filed the motion too late.[31]

In each of these cases we considered the *Richard B.* factors[32] and applied the due process analysis from *Mathews v. Eldridge*.[33] Each of the *Richard B.* factors relates to one of the three *Mathews* factors: the private interest at stake, the risk of an erroneous deprivation and the probable value of additional safeguards, and the burden on the state in providing additional protections.[34] In *Seth D.* we observed that a court's

---

[26] 175 P.3d at 1226, 1230.

[27] *Id.* at 1226.

[28] *Id.* at 1226, 1229. We also concluded that any error in denying the father's request to attend the trial to testify in person was harmless because he was released from jail before the end of the trial and testified in person. *Id.* at 1229.

[29] 389 P.3d 35, 40 (Alaska 2017).

[30] *Id.*

[31] *Id.* at 43-46.

[32] *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Fam. & Youth Servs.*, 71 P.3d 811, 826-33 (Alaska 2003); *Seth D.*, 175 P.3d at 1226-31, *Alex H.*, 389 P.3d at 41-54.

[33] 424 U.S. 319, 335 (1976).

[34] *Richard B.*, 71 P.3d at 831; *see Mathews*, 424 U.S. at 335.

consideration of the requirements of AS 33.30.081(f), "if rigorously followed, seem likely to satisfy due process."[35]

We have also stated that the *Richard B.* factors are "not exclusive."[36] They are simply intended to guide the superior court in deciding whether a prisoner's presence is "essential to the just disposition of the [termination petition]."[37] A court may consider other relevant factors — such as the timeliness of a prisoner's request — in making this determination.[38]

## B.    The Superior Court Did Not Abuse Its Discretion By Denying Mitch's Transport Request

Mitch argues that the superior court abused its discretion by denying his request to be transported to the termination trial so that he could testify in person.[39] He argues that the court's analysis of the statute and the factors set out in *Richard B.* was "substantially flawed and constituted an abuse of discretion."

But the superior court had a number of reasons to deny his request. First, Mitch fails to address the fact that he waited until the Friday before his original Tuesday trial to file his transport request and when he did file his motion, he failed to serve

---

[35]    *Seth D.*, 175 P.3d at 1230.

[36]    *Alex H.*, 389 P.3d at 43.

[37]    AS 33.30.081(f).

[38]    *See Alex H.*, 389 P.3d at 46 (holding it was proper for superior court to weigh "the last-minute nature of [the father's] request and the preexisting constraints on DPS's limited resources" against transport); *see also Richard B.*, 71 P.3d at 828 (providing "less than a week to arrange for the personnel, travel accommodations, and jail space necessary to facilitate" prisoner's presence was unreasonable).

[39]    To the extent that Mitch argues the superior court erred by having ex parte contact with Public Safety, he failed to make a record by objecting at trial and failed to preserve his argument. Therefore, we need not consider it. *See Pierce v. State*, 261 P.3d 428, 433 (Alaska App. 2011) (explaining party must show that court was provided opportunity to respond to objection before seeking to reverse decision on appeal).

Public Safety as required by statute.[40] Then, despite trial having been continued from June 2023 to February 2024, and despite a specific reminder from the court in November to serve Public Safety, Mitch still failed to serve Public Safety when he filed his renewed transport request in January 2024.

In *Richard B.* and *Alex H.*, we specifically concluded that a motion filed one week before trial did not provide the "reasonable opportunity" required by statute for Public Safety's response.[41] Here, Mitch filed his original motion four days — and only two working days — before the termination trial was set to begin in June 2023. Then even after his trial was continued to February 2024, Mitch still failed to serve Public Safety by the deadline set by the court, despite repeated and explicit reminders from the court to do so. The superior court was within its discretion to deny Mitch's request due to his repeated failure to file and serve his motions in a timely manner.

Mitch also fails to show how he was prejudiced by testifying by telephone rather than in person. Mitch's children remained in need of aid due to his incarceration for killing their mother.[42] He does not challenge the superior court's finding that termination was in his children's best interests. Mitch sought only to tell the court his version of what happened the night he shot the children's mother and to make clear his preference that the children be placed with friends from church. But OCS had placed the children with family in accordance with the priority established in the CINA statute,

---

[40]  AS 33.30.081(f).

[41]  *Id.*; *Richard B.*, 71 P.3d at 828 (holding that father's request for transport six days before trial did not give Public Safety sufficient time to "arrange for the personnel, travel accommodations, and jail space necessary to facilitate" father's presence at trial); *Alex H.*, 389 P.3d at 46 (providing that father's request one week before trial for transport did not give Public Safety enough time to "reasonably resolve logistical conflicts and avoid unexpected costs").

[42]  *See* AS 47.10.011(2); AS 47.10.011(6); AS 47.10.011(8)(A); AS 47.10.011(8)(B)(ii).

and Mitch made no argument that there was reason not to comply with it.[43] Furthermore, Mitch's in-person testimony would not have altered the superior court's decision to terminate his parental rights because that decision did not depend on Mitch's credibility.[44] Mitch's testimony would not alter the fact that his children were unquestionably in need of aid due to his incarceration and Cleo's death. Because Mitch's testimony focused largely on his version of the events leading up to his wife's death, it was therefore irrelevant to any of the findings the superior court was required to make.

Further, the superior court had already ruled that it could not "make th[e] finding" that Mitch's presence was "essential to the just disposition of the action." Without that finding, the statute did not authorize the court to order Mitch's transportation.[45]

The court recognized that the termination of Mitch's parental rights was "clearly a substantial matter."[46] But it also recognized that Mitch's parental rights were not the only "substantial matter" at issue — the court properly balanced Mitch's interest

---

[43]    *See* AS 47.10.088(i).

[44]    *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976) (requiring courts to consider "the risk of an erroneous deprivation" through procedures used and "probable value" of additional process); *see also Richard B.*, 71 P.3d at 827 (directing courts to consider prisoner's interest in presenting testimony in person as opposed to other means); *D.M. v. State, Div. of Fam. & Youth Servs.*, 995 P.2d 205, 212 (Alaska 2000) (requiring courts to "assess the ways" in which person "might have been prejudiced" when considering "probable value" of additional process).

[45]    AS 33.30.081(f). That finding alone is enough to support the court's denial of Mitch's motion.

[46]    *Alex H.*, 389 P.3d at 43 (stating "it is undisputed that '[p]arents have a fundamental right to the care and custody of their children and this right does not immediately cease when a parent is incarcerated.' " (alteration in original) (quoting *Seth D. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 175 P.3d 1222, 1230 (Alaska 2008)).

against "the need for [termination] determinations to be made in a timely fashion." OCS filed the termination petition in November 2022. The termination trial was scheduled seven months later at his attorney's request, specifically in order to arrange his transportation.[47] And it was then continued another eight months after that. The court properly denied Mitch's request to delay the trial further to allow him to be transported because additional delay was contrary to the children's best interests.[48]

## V.    CONCLUSION

The decision of the superior court is AFFIRMED.

---

[47]    *See* AS 47.10.088(j) (requiring superior court to hold termination trial within six months of filing of termination petition, absent "good cause" shown, which requires court to "take into consideration the age of the child and the potential adverse effect that the delay may have on the child").

[48]    *See R.F. v. S.S.*, 928 P.2d 1194, 1197 (Alaska 1996) (stating in termination proceedings "the best interests of the child are paramount").