### BOYLE et al. v. BARNETT.

No. 20096. Opinion Filed April 26, 1932.

Rehearing Denied June 21, 1932.

Ames, Cochran, Ames & Monnet, for plaintiffs in error.

C. A. Chandler, E. D. Turnage, and Wm. Blake, for defendant in error.

HEFNER, J. This is an action brought in the district court of Muskogee county by Sequoyah Barnett against Philip Boyle to cancel a certain mineral deed executed by him on the ground of fraud. R. J. Edwards and K. W. Dawson, purchasers of the mineral rights involved from defendant Boyle, by permission of the court, intervened in the action and filed their petition in intervention, wherein they denied that the transaction between plaintiff and defendant was fraudulent, and also pleaded that they were innocent purchasers of the mineral rights. Hagar Barnett claimed an interest in the mineral rights and also executed a mineral deed to defendant Boyle covering the same. She likewise filed an action to cancel and set aside her deed on the ground of fraud. Interveners herein interpleaded in that action. The cases were consolidated and tried to the court and resulted in a judgment in favor of plaintiffs, canceling the mineral deeds. Defendant and interveners have filed two separate appeals; one from the judgment in favor of Sequoyah Barnett, and one from the judgment in favor of Hagar Barnett. The appeal here involved is that from the judgment in favor of the former.

Appellants assert that the evidence is insufficient to sustain the finding of the trial court that the deeds were procured from plaintiffs by fraud. The evidence on this question discloses that plaintiffs inherited an interest in 160 acres of land from Mennes Barnett, deceased. Hagar Barnett was the wife of deceased, and Sequoyah Barnett was his son. Mennes Barnett, prior to his death, had executed an oil and gas lease on the land to defendant Boyle, and had also disposed of a portion of the mineral rights which were thereafter also acquired by defendant. Thereafter defendant sold his interest in the oil and gas lease to various parties, and contracted with them to drill a well on the land, which was at that time incumbered with three mortgages in amounts of $4,000, $560, and $700. The first and second mortgages were owned by C. W. Mandler. Defendant, after selling these interests in the lease, proceeded under his contract to drill a well on the premises and drilled to a depth of 1,615 feet, at which depth he ceased operations for several days. Plaintiffs, at this time, owed $240 past-due interest on the first mortgage and a past-due note of $80 secured by the second mortgage, and on October 15, 1927, suit was brought by Mandler, holder of the second mortgage, to foreclose the same. Defendant Boyle, after ascertaining that suit was filed, and on October 19, 1927, called upon plaintiffs and ob-

tained from them the mineral deeds in question, and, on October 20th drilled in a paying well.

Plaintiffs testified that, in order to obtain the deeds, defendant made the following misrepresentations to them: That suit was filed to foreclose the mortgage, and, unless immediate payment was made, they would be ejected from the premises the next day and lose their entire interest in the land, but, if they would execute a mineral deed to a portion of the royalty which they owned in the land, he, defendant, would settle the foreclosure suit and see that the same was dismissed; the well then drilled on the premises was a dry hole and was a salt water well, and unless the deeds were executed as demanded by him he would move his rig from the land and do no further drilling thereon. Plaintiffs also testified that Sequoyah Barnett told defendant that, if given a little time to raise the money, he thought he would be able to do so by borrowing it from his sister, and defendant replied that the matter could not be delayed, and if a settlement were not made immediately plaintiffs would be ejected from the land the next day. They also testified that the foreclosure suit was never dismissed, but that it is still pending.

Defendant denied that he made the representations as alleged by plaintiffs, and that he knew he had struck paying sand at the time he acquired the mineral deeds, and stated that he was surprised when the well came in at approximately that depth. Defendant further testified that he had sold interests in the lease and had warranted the title thereto, and there was deposited in escrow in the bank, under the drilling contract, the sum of $8,000 which he could not draw until the suit to foreclose was settled and adjusted. He further testified that he paid, on behalf of plaintiffs, the sum of $240 past-due interest on the first mortgage, and a note for $80, which was secured by the second mortgage, and also paid certain back insurance and costs of suit, which payments amounted in the aggregate to the sum of $457. He also testified that Mandler, who had brought suit for foreclosure, would not agree to settle it until the second mortgage was paid in full, and, in order to effect a settlement, he purchased that mortgage and thereafter resold it to interveners herein. Defendant admits that the foreclosure suit has never been dismissed and is still pending.

This, in substance, constitutes the evidence offered on the question of fraud. It is probably sufficient to sustain the judg-

ment of the court in this respect. But, in our opinion, the judgment must be reversed because the evidence shows that interveners are innocent purchasers of the mineral rights here involved, and the deeds cannot, for this reason, be set aside.

Under the evidence, interveners purchased the mineral rights without notice of the alleged fraud practiced by defendant upon plaintiffs. The trial court found that they had no actual knowledge of the fraud, but found that, under the evidence, they were, as a matter of law, chargeable with knowledge thereof. This finding is based upon the following facts: Interveners were the owners of a portion of the mineral rights on the east 80 acres of the tract involved in the foreclosure suit; they were made parties defendant in that suit; and in order to protect their interests authorized defendant to purchase for them the first mortgage held by Mandler, and also purchased from defendant the second mortgage. At the time of the purchase of these mortgages, defendant advised interveners that he could obtain from plaintiffs the 11-acre royalty interest here involved, and he would also sell them this interest. Defendant had at that time an additional 20-acre royalty interest in the land involved in the foreclosure suit, which he also agreed to sell to interveners. The purchase of the first mortgage was a separate transaction from the purchase of the second mortgage and mineral rights herein described. Payments were made separately therefor. Interveners paid $4,000 for the first mortgage, and a lump sum of $2,480 for the second mortgage and the mineral rights.

The trial court held that, as a matter of law, the facts that interveners acquired the first mortgage through defendant and also purchased the second mortgage and the mineral rights, here involved, from him, and that these purchases were made for the purpose of compromising the foreclosure suit and disposing of that action, were sufficient to put interveners on notice of the alleged fraud practiced upon plaintiffs by defendant; and that it was therefore their legal duty to inquire of plaintiffs as to the good faith of the transaction between them and defendant before purchasing the mineral rights.

In our opinion, these facts are insufficient to charge interveners with notice of the alleged fraud. Owning a portion of the mineral rights on the east 80 acres at the time the action to foreclose the mortgage on the premises involved was filed, they had a right to protect their interest in the same, and the mere fact that in doing so they

deemed it necessary or advisable to purchase these mortgages and the royalty interest here involved did not place upon them the burden of inquiring of plaintiffs as to the good faith of the transaction between them and defendant. Nothing was brought to their attention which would cast suspicion upon the transaction between plaintiffs and defendant, and there was therefore no legal duty placed upon them to make inquiry relative thereto.

Plaintiffs do not insist that this finding of the trial court is correct, but argue that the judgment as to interveners should be sustained because the evidence shows that defendant was acting as their agent in the purchase of these mineral rights. The evidence is not sufficient to sustain this theory. Interveners testified that defendant was not acting as their agent in this matter; that they purchased the mineral rights involved herein direct from him as the owner thereof, and, before defendant contracted with interveners for the sale of the mineral rights, he had already contracted for the purchase thereof from plaintiffs. Plaintiffs had, at that time, already executed to him their mineral deeds, and defendant executed to interveners his deed therefor. There is no evidence which tends to prove that interveners knew what defendant agreed to pay plaintiffs for the deeds. No separate deal was made by interveners with defendant for the purchase thereof. They purchased from him the mineral rights here involved, together with other mineral rights and the second mortgage, under one contract and for the total consideration of $2,480.

Under these facts, it cannot be said that interveners purchased the mineral rights here involved from plaintiffs through defendant as their agent.

Plaintiffs further contend that the judgment should be sustained for the reason that interveners had not placed their mineral deeds of record at the time this action was brought. In support of this contention, they rely on section 260, C. O. S. 1921, commonly referred to as the lis pendens statute. We fail to see the applicability of this statute. If interveners had purchased these mineral rights after suit had been filed, the statute would apply, but the purchase having been made prior thereto, the same is without application.

The decree canceling the mineral deeds cannot be sustained because interveners were innocent purchasers of the rights thereby conveyed. If plaintiffs have suffered damage by reason of the alleged fraud practiced upon them by defendant Boyle, their remedy under the record here presented is an action for damages against him.

The judgment is reversed and the cause remanded, with directions to enter judgment in favor of interveners.

LESTER, C. J., and RILEY, SWINDALL, and McNEILL, JJ., concur. CLARK, V. C. J., absent. KORNEGAY, J., dissents.