*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| REMY M., | ) | |
| | ) | Supreme Court No. S-15719 |
| Appellant, | ) | |
| | ) | Superior Court No. 4BE-12-00033 CN |
| v. | ) | |
| | ) | O P I N I O N |
| STATE OF ALASKA, | ) | |
| DEPARTMENT OF HEALTH AND | ) | No. 7032 – August 14, 2015 |
| SOCIAL SERVICES, OFFICE OF | ) | |
| CHILDREN'S SERVICES, | ) | |
| | ) | |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Fourth Judicial District, Bethel, Beverly Cutler, Judge pro tem.

Appearances: Rachel Cella, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. Ruth Botstein, Assistant Attorney General, Anchorage, Janell Hafner, Assistant Attorney General, and Craig W. Richards, Attorney General, Juneau, for Appellee.

Before: Fabe, Chief Justice, Winfree, Stowers, Maassen, and Bolger, Justices.

PER CURIAM.

# I.  INTRODUCTION

A father appeals[1] the termination of his parental rights to his daughter.  He claims the trial court violated his due process rights when it allowed the termination trial to conclude in his absence without first asking him directly if he wished to testify.  The father alternatively requests a remand so he can develop a record to support an ineffective assistance of counsel claim.  We affirm the trial court's decision.[2]

# II.  FACTS AND PROCEEDINGS

## A.  Family History

Kendra G.,[3] born in 2012, is an Indian child as defined by the Indian Child Welfare Act (ICWA).[4]  Her father is Remy M. and her mother was Vera G.  Both parents have a history of alcohol abuse, and Remy has a history of domestic violence.  The Office of Children's Services (OCS) initially became involved in this case after receiving reports alleging that Vera was abusing and neglecting her children.

Although Remy has been able to maintain sobriety in a highly controlled environment, such as a correctional facility, he has repeatedly relapsed, including a few months before the termination trial.  At the time of trial, Remy had not completed the recommended long-term substance abuse treatment or addressed the behavioral health issues that cause him to relapse.

---

[1]  Both parents appealed, but the mother's appeal was dismissed after her death.

[2]  We heard this case in June 2015 and issued an order affirming the trial court's decision at that time, indicating that a written opinion would follow.

[3]  We use pseudonyms to protect the family's privacy.

[4]  25 U.S.C. § 1903(4) (2012).  Kendra's mother's tribe has intervened pursuant to 25 U.S.C. § 1911(c) (2012), which permits an Indian child's tribe to intervene in state court Child in Need of Aid (CINA) proceedings.

OCS petitioned to terminate Vera's and Remy's parental rights to Kendra. A termination trial took place over four days in Bethel before Senior Superior Court Judge Beverly Cutler in July 2014.[5] OCS presented numerous exhibits and the testimony of 16 witnesses to support its claim that termination of Remy's parental rights was necessary because of Remy's substance abuse, domestic violence, criminal behavior leading to incarceration, and parenting deficiencies.

OCS also presented evidence of Kendra's special needs[6] and the developmental progress she had made since being removed from her parents' care. Kendra was moved five or six times during the two years of OCS custody before settling in with her potential adoptive foster family in Akiak.

**B.      Remy Left During The Termination Trial.**

Remy attended most of the trial.  On the third day of trial, a Wednesday, Remy's attorney asked the court if Remy could be absent from trial on the following day, Thursday, to attend an integrated mental health and substance abuse assessment. Remy's counsel clarified that Remy was not requesting a continuance, and the trial court responded that Remy did not have to be present because the case was civil, not criminal. At the end of Wednesday's trial day, counsel and the court discussed the order of testimony for the next day.  Counsel for OCS told the court that its last witness was not available until 11:30 a.m. Thursday.  The trial court asked if the parents were "willing to indicate whether they believe they have any non-party witnesses they're going to be calling."  Remy's counsel said, "I don't have any," and Vera's counsel said, "just my client."  In an effort to avoid wasting the morning hours before the last OCS witness

_____

      [5]      Judge Cutler served under a pro tem appointment pursuant to article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

      [6]      OCS presented testimony that Kendra has problems with her hips and other joints and that she is delayed in language, muscle development, and gross motor skills.

scheduled for 11:30 a.m., the trial court suggested that Thursday morning might be a good time for the parents to testify, if they intended to do so. The court explained:

> Well, I would suggest that if the parents are willing to resume at 8:30 [a.m.] or even 9:00 tomorrow, even in the absence of the state's last witness, based on the fact that I'm sure they've already received some discovery about what the state's last witness is going to say anyway, if they're willing to start being witnesses themselves, or if they want to be witnesses, we could use the time that way instead of having a whole three hours go unused from 8:30 to 11:30.

> But again, I realize that it's not exactly like a criminal case where the defendant has to decide whether to take the stand, but I know that could put pressure on them that they feel is not warranted unless the state has actually rested.

Trial was scheduled to resume at 9:00 a.m. but Remy was not present. His attorney explained to the trial court the possibility that she (the attorney) "could have scared [Remy] about testifying" when she "tried to . . . give him some tips and give him some examples of the kind of questions he would get." The trial court told the parents' counsel that if their clients wished to testify, they would need to do so that day, but the court assured the attorneys that it would not hold it against either parent if the parent chose not to testify. The trial court affirmed that OCS "still has the same burden."

Both parents eventually arrived for trial, and once they both entered the courtroom, Vera took the witness stand. But Vera's testimony was interrupted so that OCS could present its final scheduled witness at 11:30 a.m. After OCS rested its case, Remy left the proceedings to attend the mental health and substance abuse assessment. In Remy's absence, his attorney told the trial court that Remy might be gone up to three hours but that she did not intend to call him as a witness. Remy's attorney again attempted to explain to the court that Remy was not testifying because he was anxious,

but the court interrupted and said it would not accept counsel's representations of Remy's feelings.

Vera completed her testimony in Remy's absence. The trial court offered Remy's counsel an opportunity to find and consult with her client again about testifying or about closing argument strategy. Remy's counsel reiterated that Remy "[did not] want to testify" because "[h]e had a lot of anxiety about it." Again, the trial court cautioned that it would not consider a hearsay report of Remy's motivations.

At the close of trial, the court provided the parties with an hour and a half to prepare for closing arguments and to consult. The court said to Remy's counsel, "[I]f you wish to consult with your client . . . if he wants to come back for final argument, if you just want to consult with him about what — how he wants his case presented, you have an hour and a half to locate him." Remy's attorney responded, "I talked to him about that before. . . . I said if we get that far, what do you want to do, and he told me."

The trial court then proceeded to make oral findings, "beyond a reasonable doubt," that Kendra was in need of aid, and that even though Remy wanted to be a good father, he had been unable to follow through with any changes in his life to become an adequate parent for her in the near future. The court found it "hugely problematic" that Remy had not attained long-term sobriety and had no resources to provide for his daughter. The court addressed Kendra's best interests and found, through expert testimony and beyond a reasonable doubt, that returning Kendra to either parent would likely cause her serious emotional or physical damage. The trial court also noted that both parents had "extraordinarily able and devoted lawyers."

Two months passed before the trial court issued written findings, in September 2014, again finding that Kendra was a child in need of aid pursuant to

AS 47.10.011(6) (physical harm),[7] (9) (neglect),[8] and (10) (substance abuse).[9] The trial court made detailed findings on all required statutory factors before terminating both parents' rights to Kendra.

Remy does not appeal the substance of the trial court's decision. Instead he argues that the trial court violated his right to due process because it failed to advise him that he had a right to testify and because it permitted his attorney to waive that right in his absence. Remy argues in the alternative that even if he was not denied due process, "this court should remand the case for development of the record in support of an ineffective assistance of counsel claim."

## III.  STANDARD OF REVIEW

The parties dispute whether Remy's failure to raise the argument he now raises on appeal constitutes a waiver of that issue. Because Remy did not raise the issue to the trial court, we review it for plain error.[10] "[P]lain error exists in a CINA case

---

[7]    AS 47.10.011(6) allows the trial court to find a child in need of aid if it finds that "the child has suffered substantial physical harm, or there is a substantial risk that the child will suffer substantial physical harm, as a result of conduct by or conditions created by the child's parent, guardian, or custodian, or by the failure of the parent, guardian, or custodian to supervise the child adequately."

[8]    AS 47.10.011(9) allows the trial court to find a child in need of aid if it finds that "conduct by or conditions created by the parent . . . have subjected the child or another child in the same household to neglect."

[9]    AS 47.10.011(10) allows the trial court to find a child in need of aid if it finds that the parent's "ability to parent has been substantially impaired by the addictive or habitual use of an intoxicant, and the addictive or habitual use of the intoxicant has resulted in a substantial risk of harm to the child."

[10]    *Kyle S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 1262, 1267 (Alaska 2013).

where an obvious mistake has been made which creates a high likelihood that injustice has resulted."[11]

## IV. DISCUSSION

Remy argues that his right to testify could not be waived by his attorney. Relying on *LaVigne v. State*,[12] Remy asks us to initiate a new rule prohibiting a trial court from concluding a termination trial without first notifying the parents that they have a right to testify at trial and precluding the parents' counsel from expressing the client's waiver of that personal right. For the reasons discussed below, we conclude that *LaVigne* is inapposite, and we decline to adopt Remy's proposed rule.

In *LaVigne* a defendant in a criminal case told his attorney that he wanted to testify on his own behalf. But his attorney unilaterally decided that LaVigne should not testify, without informing LaVigne that he had a right to insist on testifying in spite of his counsel's advice.[13] There was no dispute that "LaVigne's attorney unlawfully usurped LaVigne's decision whether to testify."[14] We concluded that because "[t]he constitutional right to testify is both personal to the criminal defendant and fundamental to the dignity and fairness of the judicial process," the ultimate decision whether to exercise the right to testify belongs to the defendant and not the defendant's counsel.[15]

---

[11] *Id.* (internal quotation marks and citation omitted).

[12] 812 P.2d 217 (Alaska 1991).

[13] *Id.* at 218.

[14] *Id.* at 220.

[15] *Id.* at 219 (citations omitted).

Thus we remanded the trial court decision for an evidentiary hearing and determination whether the error was harmless beyond a reasonable doubt.[16]

We also pointed out that trial courts could avoid similar problems in the future if they "[took] steps to insure that a criminal defendant's failure to take the stand in his or her own defense was the result of a knowing and voluntary decision made by the defendant."[17] We thus directed trial courts to "make an on-the-record inquiry after the close of the defendant's case, although out of the jury's hearing, into whether a nontestifying defendant understands and voluntarily waives his right."[18] We explained that the express purposes of this process are to ensure "a valid waiver of the defendant's right" and to "assist in any subsequent appellate review of a defendant's claim to the contrary."[19]

Remy argues that he has a due process right to a *LaVigne* warning. But our direction in *LaVigne* that the trial court "make an on-the-record inquiry after the close of the defendant's case" should not be conflated with a substantive due process right.[20] We do not need to reach the question whether parents in parental rights termination proceedings have the same rights as criminal defendants to make the final decision whether to testify because Remy has not even made the threshold allegation that he wished to testify and that his attorney "unlawfully usurped [his] decision."[21]

---

[16] *Id.* at 220-21.

[17] *Id.* at 222.

[18] *Id.*

[19] *Id.*

[20] *Id.*

[21] *Id.* at 220.

There is nothing in the record — not in the courtroom, not in pleadings, not during oral argument, and not even in this appeal — to indicate that Remy wanted to testify. In fact, it appears from his attorney's repeated statements to the trial court on the record that Remy made the decision not to testify, despite ample opportunity to do so. On three occasions, Remy's attorney informed the trial court that Remy did not wish testify, repeatedly attempting to explain that Remy was anxious after hearing "examples of the kind of questions he would get." And Remy chose to leave the courtroom in the middle of trial, knowing that the trial might end before he returned.

If Remy wanted to testify, he had ample time to express his wishes after the presentation of evidence concluded, including the extra time the trial court provided before closing argument and the two months between the end of trial and the trial court's issuance of written findings. And even after the final termination order, Remy never filed anything to alert the trial court of his wish to testify. Therefore, even if Remy had the same right as a criminal defendant to make the final decision whether to testify, he has not established any violation of that right.[22]

---

[22] Moreover, requiring the trial court to make on-the-record inquiries into the right to testify in the context of parental rights termination proceedings would be extremely difficult to administer. Termination trials often occur without a parent because the parents are incarcerated or are otherwise unavailable, *see, e.g.*, *Seth D. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1222 (Alaska 2008) (upholding trial court's decision denying father's request to be transported to attend trial when father testified telephonically and was physically present for some of the trial); *Richard B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 71 P.3d 811, 828 (Alaska 2003) (concluding that, when father was permitted to testify by telephone, procedural due process did not require that he be transported to the termination trial); *Mary E. v. State*, Mem. Op. & J. No. 1151, 2003 WL 22994469 (Alaska Dec. 17, 2003) (upholding trial court's denial of mother's request for a short continuance of termination trial when mother could not attend the rest of trial personally, for medical reasons), because the parents have failed to appear for trial, *see Marcia V.*
(continued...)

Remy also requests a remand for an evidentiary hearing to develop a factual record, suggesting that his attorney's conduct "*may* entitle [him] to relief based upon an ineffective assistance of counsel claim." Remy asserts that a remand is necessary because "it is not possible to determine what evidence [he] would have presented if his attorney had not waived his presence" or "whether [his] attorney acted reasonably under the circumstances." Although Remy argues that he "was not there to insist that his lawyer was acting against his wishes," he offers nothing to support a claim that she was in fact acting against his wishes. We thus conclude that Remy has not met even the threshold requirement for us to evaluate the claim at an appellate level, much less to require a remand.

When we review an ineffectiveness claim after a parental rights termination trial, we apply a two-pronged test. The test requires the litigant to show first that his attorney's performance was below a level that any reasonably competent attorney would provide and second that counsel's improved performance would have affected the outcome of the case.[23] Remy alternatively argues that if we review his claim on direct appeal, we should conclude that his counsel provided ineffective assistance of counsel

---

**22**(...continued)
*v. State, Office of Children's Servs.*, 201 P.3d 496, 501 (Alaska 2009) (mother received notice of the trial but did not attend), or because they chose to leave at some point during the trial, *see, e.g.*, *Jordan J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1538, 2015 WL 1985060, *7 (Alaska Apr. 29, 2015) (mother exited the courtroom mid-trial without clarifying whether she wished to relinquish her parental rights, leaving her attorney confused about which direction to take); *William S. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, Mem. Op. & J. No. 1474, 2014 WL 199882, *11 (Alaska Jan. 15, 2014) (father left the courtroom without warning).

**23**     *See Chloe O. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 309 P.3d 850, 858-59 (Alaska 2013).

when she failed to advise him to stay and testify.  Again, Remy points to no specific conduct of concern and simply asks us to speculate that he might have a claim that his attorney was ineffective.  In sum, Remy makes no credible attempt to establish even the first prong of the test for ineffective assistance of counsel.  Thus, there is no basis upon which to analyze an ineffective assistance of counsel claim.

## V.    CONCLUSION

For the reasons set forth above, we AFFIRM the decision of the trial court.